**Harriet M. REEPE, Administratrix of the Estate of George W. Reepe, deceased, Plaintiff,**

v.

**AMERICAN AGRICULTURAL CHEMICAL CO., corporation, and James O. Rookard, Defendants.**

Civ. A. No. 2045.

United States District Court
W. D. South Carolina
Spartanburg Division.

May 25, 1957.

James P. Mozingo, III, John L. Nettles, Darlington, S. C., Harry C. Martin, Asheville, N. C., for plaintiff.

W. Francis Marion, Haynsworth, Perry, Greenville, S. C., Bryant, Marion & Johnstone, for defendants.

WYCHE, Chief Judge.

This action having been tried by me without a jury, in compliance with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. The plaintiff is the duly appointed and acting administratrix of the estate of George W. Reepe, who died intestate in Buncombe County, North Carolina, on June 25, 1956.

2. The plaintiff is a citizen and resident of Buncombe County, North Carolina.

3. The defendant American Agricultural Chemical Company and the defendant James O. Rookard are both citizens and residents of the State of South Carolina.

4. More than $3,000 is in controversy in this action, exclusive of interest and costs.

5. George W. Reepe, plaintiff's intestate, died intestate on June 25, 1956, in Buncombe County, North Carolina.

6. On June 25, 1956, plaintiff's intestate was a gang foreman, acting in the course and scope of his employment, with the North Carolina State Highway and Public Works Commission, and was working at a point approximately two miles south of the City of Asheville, North Carolina, on United States Highway No. 25. This highway at the point where the fatal accident occurred runs approximately north and south. It is a straight stretch of asphalt roadway 22 feet wide, divided down the center by a center white line.

7. On the east side of the improved portion of the highway at the point where the deceased was sitting at the time he received his fatal injury there is an unimproved dirt shoulder approximately three feet wide which extends to a

ditch approximately two feet wide. To the east of the ditch there is a bank which rises at a steep angle for about four and one-half feet, then breaks slightly and continues on at a lesser angle for several feet. The deceased was sitting just above the break in the bank looking generally north in the direction of Asheville, North Carolina. He was about five feet above the level of the improved roadway, and six to seven feet east of the most eastern edge of the improved portion of the highway. At the time of his fatal injury the deceased was supervising prisoners who were engaged in "trimming" the growth and brush from the bank which is located on the west side of the highway. The prisoners were on the opposite side of the road from the place where the deceased was sitting. The prisoners, as well as the deceased, were all back beyond the improved highway, the shoulders and ditch on both sides of the roadway. The prisoners were strung out on the west side of the highway and all were working north of where the deceased was sitting.

8. At a point approximately 50 feet south of where the deceased was sitting a private dirt road enters the highway from the east or right-hand side of one traveling north toward Asheville. The entrance of this dirt road runs along the improved portion of the roadway for about 48 feet. The entrance of this dirt road is located at the crest of a hill which extends south toward Hendersonville, North Carolina.

9. At the time of the fatal injury there was a truck and trailer belonging to the North Carolina State Highway and Public Works Commission and so painted as to be easily identified as equipment belonging to the North Carolina State Highway and Public Works Commission, parked in the entrance of this dirt road and approximately parallel to the improved portion of the roadway, and three to four feet off of the improved surface of the roadway. Grady Tomberlin, also an employee of the North Carolina State Highway and Public Works Com-

mission, was sitting in the cab of this truck looking toward the deceased at the time of his fatal injury. Johnny Witherspoon, who was water-boy for the gang which the deceased was working, was standing by the trailer and was looking toward the deceased.

10. At about 10:30 a. m. a truck belonging to the defendant American Agricultural Chemical Company was being driven by the defendant James O. Rookard, who was at all times acting in the course and scope of his employment, in a northerly direction on U. S. Highway No. 25 toward the City of Asheville. The truck was under the exclusive control and management of the defendant James. O. Rookard at the time of the fatal injury. The truck approached from the south and was traveling at a speed of approximately 35 miles per hour as it reached the crest of the hill, when it was driven gradually to its right off of the improved portion of the highway onto the shoulder, then off of the shoulder into the ditch and into and against the deceased. James O. Rookard did not blow his horn or give any warning that he was leaving the improved portion of the highway. In so leaving the highway he failed to keep the truck under proper control, and did not apply any brakes in an effort to avoid the injury to the deceased or again to get the truck under his proper control. He did not maintain a proper lookout although he knew from having seen the North Carolina State Highway and Public Works Commission truck parked in the dirt road to his right that men were working just ahead. No reasonable explanation has been offered as to why the truck left the improved portion of the highway. In fact, the highway ahead of the truck at the time it started to leave the improved portion of the highway was clear and free of any obstructions or traffic. The truck, in leaving the highway under these circumstances, violated Sections 140, 141, 154 of the North Carolina Motor Vehicle Code, G.S.N.C. §§ 20–140, 20–141, 20–154. Such conduct on the part of James O. Rookard was clearly

negligent and the direct and proximate cause of the death of George W. Reepe, deceased.

11. George W. Reepe was fifty-two years of age and was earning $3,924 annually. He was in excellent health and had a life expectancy of at least 21.71 years. He expended not more than Five Hundred ($500.00) Dollars, per year for his own use and benefit. He was survived by his widow, the plaintiff, Harriet M. Reepe, and two children, George Ronald Reepe and Marilou Reepe, all of whom were dependent in whole or in part upon the deceased for their support and maintenance.

12. The wrongful death statute of the State of North Carolina is set forth in Sections 28–173 and 28–174 of the General Statutes of North Carolina.

13. This action was instituted within two years from the date of death of plaintiff's intestate.

## Conclusions of Law

1. The Court has jurisdiction of all of the parties and of the subject matter of this action.

2. The defendant James O. Rookard was the servant, agent and employee of the defendant American Agricultural Chemical Company and was acting in the course and scope of his employment with exclusive control and management of the corporate defendant's truck at the time and place of the fatal injury of George W. Reepe.

3. George W. Reepe was killed as a direct and proximate result of the negligence of the defendants.

4. Plaintiff's intestate did not contribute to his own death.

5. The plaintiff Harriet M. Reepe, as administratrix of the estate of George W. Reepe, deceased, is the proper party to bring the action for wrongful death which is conferred upon her by virtue of Section 28–173 and Section 28–174 of the General Statutes of North Carolina.

6. The plaintiff has sustained damages in the sum of $50,000, as a fair and just compensation for the pecuniary injury resulting from the wrongful death of George W. Reepe.

7. The plaintiff is entitled to recover of the defendants jointly and severally the sum of $50,000 as just and fair compensation for the wrongful death of George W. Reepe, together with the costs and disbursements of the within action.

Let judgment be entered accordingly, and

It is so ordered.